### Brian Scott HATZAI

v.

### COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION, BUREAU OF DRIVER LICENSING, Appellant.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Aug. 2, 1996.

Decided Dec. 2, 1996.

---

Timothy P. Wile, Assistant Counsel In-Charge, and Harold H. Cramer, Assistant Chief Counsel, Harrisburg, for appellant.

No appearance entered for appellee.

Before SMITH and FLAHERTY, JJ., and RODGERS, Senior Judge.

RODGERS, Senior Judge.

The Department of Transportation, Bureau of Driver Licensing (Department) appeals from an order of the Court of Common Pleas of Montgomery County that sustained the appeal of Brian Scott Hatzai (Hatzai) and ordered that the suspension of Hatzai's operating privilege be rescinded. We reverse and direct the reinstatement of the six-month suspension.

On January 25, 1995, Hatzai was convicted of violating Section 13(a)(12) of The Controlled Substance, Drug, Device and Cosmetic Act.[1] The conviction was duly certified to the Department by the Bucks County court.

Hatzai was sent an official notice by the Department, dated and mailed June 19, 1995, advising that, as a result of his conviction, his operating privilege was being suspended for six months as mandated by Section 1532(c) of the Vehicle Code, 75 Pa.C.S. § 1532(c).[2] The suspension notice contained the following language:

> Dear Motorist:
>
> As a result of your conviction on 01/25/1995 of violating Section 13A12 of the *Vehicle Code*, ACQ/OBT/POSS—CTRL SUB on 08/31/1994, your driving privilege is being SUSPENDED for a period of 6 MONTH(S) as mandated by Section 1532C of the Vehicle Code. (Emphasis added.)

(19a.)

Hatzai filed a statutory appeal, which contained *inter alia* the following two averments:

> 4. Petitioner did not violate Section 13A12 of the Vehicle Code as alleged in the letter of revocation.
>
> 5. Any attempt to suspend Petitioner's operating privileges places the Petitioner in double jeopardy as he has already been sentenced for a violation of the Controlled Substance, Drug Device and Cosmetic Act [sic].

(2a–3a.)

At a *de novo* hearing held before the trial court, the Department entered documents into evidence certified under seal, including a certified copy of Hatzai's January 25, 1995 conviction. Hatzai presented no evidence, but his attorney raised an issue concerning defective notice. Specifically, Hatzai's attorney contended that the notice received by Hatzai contained a reference to a conviction for violating "Section 13A12 of the Vehicle Code" and that no such statute exists. How-

---

1. Act of April 14, 1972, P.L. 233, *as amended,* 35 P.S. § 780–113(a)(12), which states:
   (a) The following acts and the causing thereof within the Commonwealth are hereby prohibited:
   (12) The acquisition or obtaining of possession of a controlled substance by misrepresentation, fraud, forgery, deception or subterfuge.

2. 75 Pa.C.S. § 1532(c) states, in pertinent part:
   (c) **Suspension.**—The department shall suspend the operating privilege of any person

upon receiving a certified record of the person's conviction of any offense involving the possession, sale, delivery, offering for sale, holding for sale or giving away of any controlled substance under the laws of the United States, this Commonwealth or any other state, this Commonwealth or any other state.
(1) The period of suspension shall be as follows:
(i) For a first offense, a period of six months from the date of the suspension.

ever, Hatzai's attorney did acknowledge that Hatzai had been convicted for violating Section 13(a)(12) of The Controlled Substance, Drug, Device and Cosmetic Act (Controlled Substance Act).

The Department conceded that the suspension notice incorrectly cited the Vehicle Code when it should have referenced the Controlled Substance Act, but that Hatzai was not prejudiced by the error. The Department moved to amend the suspension notice and Hatzai objected.

After taking the case under advisement, the trial court issued an order, sustaining Hatzai's appeal and rescinding the six-month suspension. The Department now appeals to this Court.[3]

On appeal,[4] the Department contends that its notice of suspension was sufficiently informative to apprise Hatzai of the basis for the suspension and, thus, allowed him to adequately prepare a defense. In addition to citing numerous appellate opinions, common pleas court decisions and some memorandum opinions issued by this Court, the Department also cites *Department of Transportation v. Sutton*, 541 Pa. 35, 660 A.2d 46 (1995), a case concerning a chemical test refusal, wherein the date of refusal on the suspension notice was incorrect. After reviewing these various opinions, we conclude that the Pennsylvania Supreme Court's decision in *Sutton* is controlling.

In *Sutton*, the notice of suspension concerned the licensee's refusal to submit to chemical testing. The error on the notice indicated that the refusal occurred on February 4, 1993, rather than on February 3, 1993. Although the trial court and this Court sustained the licensee's appeal, the supreme court reversed holding that the notice was sufficient and that the defect was immaterial.

The *Sutton* court cited *Department of Transportation, Bureau of Driver Licensing v. Balloch*, 142 Pa.Cmwlth. 637, 598 A.2d 110 (1991), noting that "in administrative proceedings due process [should] be afforded so that the accused may prepare an adequate defense." *Id.* 660 A.2d at 48. Moreover, the *Sutton* court distinguished *Balloch*, observing that in *Balloch* the licensee had three chemical test refusals in a thirteen month period so that an incorrect date on the notice of suspension did not adequately inform the licensee which one of the three chemical test refusals was the basis for the suspension.

Conversely, in *Sutton* the court concluded that the licensee was not misled or prevented from preparing a proper defense because the licensee was well aware and prepared to defend against the test refusal on which the suspension was based. Moreover, the *Sutton* court considered the licensee's averments in his statutory appeal petition, taking into account the licensee's recognition of the date upon which the actual refusal occurred.

Although in the case before this court, the error on the suspension notice was not a date but the title of the statute under which Hatzai was convicted, we believe, as did the court in *Sutton,* that the error was immaterial. Hatzai's statutory appeal petition acknowledges his conviction under the Controlled Substance Act. He does not claim confusion because of other convictions. He cannot acknowledge the conviction in his statutory appeal petition or at the trial *de novo* and then expect this Court to believe that he was unaware of the conviction that was the basis for the suspension.

Accordingly, we reverse the order of the trial court and direct the reinstatement of the six-month suspension.

## ORDER

NOW, December 2, 1996, the order of the Court of Common Pleas of Montgomery

---

3. On June 26, 1996, Hatzai was ordered by this Court to file a brief by July 10, 1996, or be precluded from filing a brief or participating in oral argument. Due to Hatzai's failure to comply with the June 26, 1996 order, on July 29, 1996, this Court issued an order precluding Hatzai from filing a brief and determining that the matter was to be submitted on the basis of the Department's brief only.

4. In reviewing a driver's license suspension case, our scope of review is limited to determining whether the trial court committed an error of law or an abuse of discretion and whether its findings of fact are supported by competent evidence. *Commonwealth v. Danforth*, 530 Pa. 327, 608 A.2d 1044 (1992).

County, filed October 6, 1995, at No. 95–13806, is reversed and the six-month suspension is reinstated.

FLAHERTY, Judge.

I respectfully dissent. I agree with the trial court that the Department's notice which read: "violating Section 13A12 of the *Vehicle Code*, ACQ/OBT/POSS–CTRL SUB," is nearly incomprehensible. It does not inform an accused of the charges against him so as to permit him to prepare an adequate defense. Therefore, this notice does not afford the accused procedural due process. This mistake is not simply an immaterial error, like an incorrect date in *Sutton*[1] and *Davidson*,[2] or a typographical error in *Hahn*[3]—the cases relied upon by the Department. The Department should be held to the same standards as others required to give notice; thus, I disagree with the majority which gives the Department the benefit of the doubt that an accused has the intelligence, experience and skill to decipher a defective notice such as the one in this case, let alone his attorney.

An unreasonable burden is placed on Hatzai when the majority assumes that he knew that the notice stating he violated Section 13A12 of the Vehicle Code did not really mean what it said. He is found by this appellate court to have known that the notice was instead referring to another statute located 40 titles away from the Vehicle Code (Title 75), that is, in Title 35, the Health and Safety Code. Further, he is being held to a standard by which he is supposed to deduce that when he finds no section 13A12 in the Vehicle Code, he should also know that "ACQ/OBT/POSS–CTRL SUB" means "look under section 780–13(a)(12) in the Health Code." Such extraordinary insight is based on his attorney admitting that he was convicted of a different offense (a violation of the Controlled Substances Act) on January 25, 1995. His attorney's petition, however, focused on denying that he violated the Vehicle Code at that time and that his license could not be suspended for violating that part of the Vehicle Code (to which the notice misdirected him).

Therefore, I agree with the trial court's *finding* that "Hatzai arrived at the hearing ignorant of the exact nature of the charges against him, and consequently was unable to prepare an adequate defense." Trial court opinion at 5. Even though Hatzai's attorney knew of a previous conviction of another offense, there was no indication in the notice that Hatzai would have to defend a Health Code violation in this case. In effect, the majority exceeds its scope of review by making a new finding that Hatzai knew of the exact basis for the suspension and thereby goes beyond determining merely whether the trial court' s finding is supported by the evidence when it substitutes a different finding in its place.

Due process and fair treatment are not afforded a citizen who is informed of governmental action in words which do not make sense or in references to laws that do not exist or misdirect so as to render the recipient unable to prepare a defense. Here, the citizen should not be forced by the Department to perform an exercise in cryptanalysis or to obtain counsel to decipher what a cryptarithm like "Section 13A12 of the Vehicle Code, ACQ/OBT/POSS–CTRL SUB" means. The majority, while admitting that the Department erred not by a single subsection or one day in the date but by the complete identification of the proper Code, taxes the imagination with its construction of the language in the Petition for Appeal prepared by counsel for Hatzai. A proper notice respecting the due process rights of our citizens by the Department should be in correct and understandable English. Except for the allowance of immaterial typographical errors, such as the *Hahn, Davidson* and *Sutton* cases exemplify, reference should at least be made to the correct code and the correct section embodying the correct name of the offense in the statute allegedly violated in

---

1. 541 Pa. 35, 660 A.2d 46 (1995)—one days difference in the date.

2. 109 Pa.Cmwlth. 188, 530 A.2d 1021 (1987)—an incorrect date.

3. 23 Pa.Cmwlth. 540, 353 A.2d 74 (1976)—incorrect subsection cited "(1)" instead of "(a)".

understandable English. Proper information in a notice should normally be so clear as to encourage a recipient, like Hatzai, to admit to himself that he was guilty of the violation charged, to cooperate and surrender his operator's license. Instead, the defective notice by the Department was not only confusing but also encourages litigation by misdirecting and forcing Hatzai to defend against a suspension based on a second conviction of a hitherto unknown offense under a non-existent section of the Vehicle Code in the notice which showed no relationship to the Health and Safety Code violation which was previously tried.

In *Balloch*,[4] a notice containing the incorrect day and year of the violation was held not to afford due process because the operator had been charged with the same violation three different times and was unaware which of the three violations he would have to defend. Here, the Department's notice had the correct date and year but advised Hatzai that his license was suspended because he violated a section of the Vehicle Code (which did not exist). When his attorney set forth in his appeal that his client knew of a violation of the Health Code on that day but denied ever violating the section of the Vehicle Code which his client allegedly violated, the clear implication is that he prepared a case to defend against the alleged Vehicle Code violation. I disagree with the majority which equates Hatzai's knowledge of his previous violation with knowing his suspension was based on that previous Health Code violation rather than the new charge the Department was apparently bringing. No doubt Balloch also knew he had committed a previous offense but he was held unable to determine which offense to defend. Here, Hatzai was in a worse situation because he was misdirected away from a known violation to a previously unknown violation but is, nevertheless required by the majority to somehow know that this hearing had nothing to do with the Vehicle Code as charged but only dealt with the previous offense (for which he paid the penalty) and which was not even understandably cited in the notice.

The majority now introduces a new concept into license suspension cases. The Department may now mislead a licensee not only into the wrong law book but also into the wrong area of the law. Since citations no longer matter, the burden is now being placed on the licensee to decipher bureaucratic cryptographic jargon used by the Department (i.e. "ACQ/OBT/POSS–CTRL SUB")—the authority for which looks like it might be in the internet some day but it could not be currently found in Webster's Third New International Dictionary (1994), Black's Law Dictionary (6th ed.1990), the short title for the Controlled Substance Act, 35 P.S. 780–101, the Vehicle Code, 75 Pa.C.S. §§ 101–9821, or The Bluebook: A Uniform System of Citation (15th ed.1991). After receiving incomprehensible language from the Department, a citizen must now also somehow successfully find the correct citation of whatever violation the Department is attempting to enforce regardless of whether it's in the same statute, the same book or even in the 100 plus volumes of Purdon's Law confronting him. The law should not encourage incorrect bureaucratic notices by the interpretation in this case which condones them. Encouraging such bureaucratic legal cryptography also fails to recognize that in addition to the millions of citizens in this state there are many civil attorneys not familiar with the unauthorized jargon of the criminal bar, which is probably used here, who properly could not prepare the defense of this case after being so misdirected.

Now, after a learned trial judge correctly rules on such a statutory appeal, the citizen must be prepared to either find more money to pay an attorney to prepare a brief in this appellate court[5] or, to do like Hatzai, and rely on the splendid opinion of a good trial Judge like the Honorable Paul W. Tressler in the common pleas court, whose opinion I would affirm.

4. 142 Pa.Cmwlth. 637, 598 A.2d 110 (1991).

5. The appellee, Hatzai, did not file a brief in this court after the Department appealed the common pleas court decision which sustained his successful appeal to the local court and rescinded the suspension.